UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BRENT BORLAND, BORLAND CAPITAL GROUP, LLC, and BELIZE INFRASTRUCTURE FUND I, LLC<br><br>Defendants, and<br><br>CANYON ACQUISITIONS, LLC, and ALANA LaTORRA BORLAND,<br><br>Relief Defendants. | 18-cv-4352 (PKC)<br><br><u>OPINION AND ORDER</u> |

CASTEL, Senior District Judge:

Pending before this Court is the motion of the Securities and Exchange Commission ("SEC") for various forms of relief, including the approval of a plan for distributing funds to investors who were financially harmed by the misdeeds of the defendants in connection with the fraudulent sale of promissory notes issued to finance the construction of an airport in Placencia, Belize. The SEC maintains that defendants defrauded 44 investors of approximately $21.9 million. (ECF 52 at 1.)

This Order relates to the SEC's now-revised Distribution Plan (ECF 123) that would authorize the distribution of $2,321,755.02 to the victims of the fraud on a *pro rata* basis in accordance with the size of their losses. Copper Leaf LLC ("Copper Leaf") is one such victim. It objects to the Distribution Plan and urges that because it is the holder of a judgment lien against Brent Borland in the amount of $10,235,711.93, it should not be placed on an "equal footing" with other victim investors in any *pro rata* distribution. (ECF 115 at 8.) For reasons to be explained the

objection to the Distribution Plan is overruled and the Distribution Plan is approved, effective 14 days from the date of this Order. Copper Leaf's motion for a stay pending appeal will be denied.

The Criminal Proceeding

In a parallel criminal proceeding, Brent Borland was convicted of conspiracy to commit securities fraud and substantive counts of securities fraud and wire fraud. United States v. Borland, 18-cr-487 (KPF). Judge Failla imposed an aggregate sentence of principally 84 months imprisonment, and on October 5, 2021, imposed a restitution obligation of $26,184,970. (18-cr-487, ECF 109, 110.)

The Completed Sale of the Sag Harbor Property

At an earlier stage of this action, defendants consented to a Final Judgment that provided for disgorgement of $6,266,843.37 plus prejudgment interest of $949,020.96 against Brent Borland and relief defendant Alana LaTorra Borland. (ECF 64, 65.) The Final Judgment also imposed disgorgement against the two LLC defendants and the LLC relief defendant in the amount of $14,233,157 and prejudgment interest of $2,224,712. (ECF 64.)

On January 12, 2024, the SEC moved this Court for an order that, among other things, would appoint a liquidation agent for certain real property held in the name of "Alana Marie LaTorra Borland, as Trustee of the 43 N. Haven Way Revocable Trust" and located at 43 North Haven Way, Sag Harbor, NY (the "Sag Harbor Property"). (ECF 52, 52-1, -2.) The SEC also sought to invalidate a lien held by Copper Leaf because, in the SEC's view, it was obtained in violation of an asset freeze Order. (ECF 52.) Copper Leaf appeared and disputed the contention. (ECF 56.)

In an Order of August 30, 2024, the Court did not find it necessary to reach the issue of the impact of the asset freeze Order because it found that, under New York law, Copper Leaf never acquired a valid lien on the Sag Harbor Property. (ECF 71.) As that Order explained,

Copper Leaf's purported lien on the Sag Harbor Property arose by reason of the filing with the Clerk of Suffolk County, New York, a "Transcript of Judgment" and an "Abstract of Judgment certified by the Clerk of this Court and identifying "Brent Borland" as the judgment debtor. The process followed by Copper Leaf complied with N.Y. CPLR § 5018(b) and was effective in creating a lien against all real property held in the name of Brent Borland in Suffolk County. But the title holder of the Sag Harbor Property was not Brent Borland but the Trust of which Alana Borland was Trustee. (ECF 71.)

Under New York law, "[a] judgment is not docketed against any particular property, but solely against a name. . . ." We Buy Now, LLC v. Cadlerock Joint Venture, LP, 46 A.D.3d 549, 549 (2d Dep't (2007) (quoting Grygorewicz v. Domestic & Foreign Disc. Corp., 179 Misc. 1017, 1018 (N.Y. Sup. Ct. Kings County 1943)). The Appellate Division, Second Department, encompassing Suffolk County, has held that the incorrect spelling of a debtor's surname means that no valid lien is created in real property actually owned by the true debtor. Fischer v. Chabbott, 178 A.D.3d 923, 925 (2d Dep't 2019) ("Because the judgments were not docketed under the correct surname, no valid lien against Julius's interest in the subject property was created."); see also Smith v. Ralph Dinapoli Landscaping, Inc., 111 A.D.3d 841, 842 (2d Dep't 2013) ("[T]he petitioners' submissions demonstrated that the judgment obtained by the appellant was not docketed under the correct surname of a title owner of the subject property. Therefore, no valid lien against the subject real property was created.").

In its August 30, 2024 Order, the Court concluded the judgment was correctly docketed with the County Clerk in Suffolk County in the correct name of the judgment debtor (i.e., Brent Borland) and became a lien upon all real property in the judgment debtor's name located within the County. But it did not become a lien against the Sag Harbor Property because it was held in the name of "Alana Marie LaTorra Borland, as Trustee of the 43 N. Haven Way Revocable

Trust." (ECF 71.)

Copper Leaf moved for reconsideration of the Court's August 30 Order on September 13, 2024. (ECF 72.) On September 30, 2024, Copper Leaf filed a notice of appeal from the August 30 Order. (ECF 84.)[1] On October 2, 2024, the Court issued two Orders, the first denying the motion for reconsideration and the second approving the Sale of the Sag Harbor Property and other related relief. (ECF 86, 87.)

On October 31, 2024, Copper Leaf filed second and third notices of appeal addressed to the two October 2 Orders. (ECF 90, 92.) At no time did Copper Leaf seek a stay pending appeal of the August 30 Order or the two October 2 Orders from either this Court or the Court of Appeals. Subsequently, the sale of the Sag Harbor Property closed free and clear of the purported Copper Leaf lien, and on February 23, 2025, the entire net proceeds of the sale, totaling $2,272,284.21, were transferred to the SEC. (ECF 98.)

On November 24, 2025, the mandate issued from the Second Circuit dismissing the appeals for want of appellate jurisdiction because the distribution plan for the proceeds from the sale of the property had not been proposed or approved by the district court and, hence, the issue did not meet the finality requirement. (ECF 99.) The Second Circuit also concluded that so much of Copper Leaf's appeal as challenged the sale order was "moot." (Id. at 6.)

The Distribution Plan

"In general, this Court has broad authority to craft remedies for violations of the federal securities laws . . . and within that broad authority lies the power to approve a plan of distribution proposed by a federal receiver."[2] SEC v. Byers, 637 F. Supp. 2d 166, 174 (S.D.N.Y.

---

[1] Because of the motion to reconsider, the Court of Appeals for the Second Circuit briefly stayed the appeal; the stay was lifted shortly after this Court's issuance of the October 2 Order denying the motion to reconsider. (24-2619, Order of Oct. 18, 2024.)

[2] The point is equally applicable where the SEC proposes the plan of distribution. See WorldCom, Inc. v. S.E.C., 467 F.3d 73, 84 (2d Cir. 2006) ("We have long understood that the SEC's charge to enforce the securities laws carries with it the discretion to determine how to distribute recovered profits among injured investors.")

2009) (Chin, J.) (citing Second Circuit case law) (internal citations omitted). "The Court has the authority to approve any plan provided it is 'fair and reasonable.'" Id. (quoting SEC v. Wang, 944, F.2d 80, 81 (2d Cir. 1991)).

The revised Distribution Plan provides for each investor listed on the Schedule of Victims in the parallel criminal case to receive a *pro rata* portion of the recovered funds based on the amount of each investor's loss. (ECF 123.) The SEC asserts that it has recovered $2,321,755.02 (the "Recovered Amount") pursuant to the Final Judgment in this action. The Distribution Plan contains a Plan of Allocation, provides for a Distribution Agent, a dispute resolution mechanism for disputed claims, a procedure in the event additional funds are recovered and a procedure in the event that there are undistributed funds. Per the terms of the Distribution Plan, the bulk of the Recovered Amount will be transferred by the SEC to the Court Registry account for the parallel criminal action, a ministerial provision that creates no detriment to any injured investor, including Copper Leaf.[3] Net of certain expenses, the Recovered Amount will be distributed *pro rata* to the victim investors in accordance with the size of their losses and in accordance with the Distribution Plan submitted to this Court for approval.

Plans that distribute funds to injured investors on a *pro rata* basis are often found to be fair and reasonable. See, e.g. a SEC v. Orgel, 407 F. App'x 504, 506 (2d Cir. 2010) (affirming a *pro rata* distribution plan to victims of Ponzi scheme); SEC v. Stein, 09 cv 3125 (RJS), 2012 WL 13089181, at *1 (S.D.N.Y. Mar. 28, 2012) (Sullivan, J.) ("Clear Second Circuit authority indicates that *pro rata* distributions 'are the most fair and most favored in receivership cases.'"); In re The Reserve Fund Securities & Derivative Litig., 673 F. Supp. 2d 182, 199 (S.D.N.Y. 2009) (Gardephe, J.) ("While *pro rata* distribution is not necessarily a plan that everyone will like, it is

[3] Copper Leaf has expressed its concern that such a transfer impairs its appellate rights. The SEC does not view it impacting its right to appeal. (July 16, 2026 Tr. at 9-10 (ECF 138).)

the most equitable means of distributing the remaining assets of the Primary Fund in light of the unprecedented circumstances surrounding its collapse.") (internal citation and quotation marks omitted).

Copper Leaf asserts that it is the largest or one of the largest victims of defendants' fraud and so its portion of the Recovered Amount should be one of the largest, if not the largest, on a *pro rata* basis. It asserts that its judgment and/or lien against Borland gives it priority over the claims of other victim investors. (See ECF 115 at 8.) Implicit in its position is that the entirety of the Recovered Amount should be awarded to it. (July 16, 2026 Tr. at 7 ("Well, the Court knows we asked for it all.").) The Court concludes that the Distribution Plan is fair and reasonable and Copper Leaf has no legal or equitable right to a priority. .

Transfer of title to the Sag Harbor Property has passed and the net proceeds have been distributed to the SEC without regard to Copper Leaf's claim to a lien on the property. Copper Leaf neither sought nor obtained a stay pending appeal of the Court's Orders that Copper Leaf's lien did not apply to the Sag Harbor Property and that the sale of the property may proceed. Its claim premised upon enforcement of the lien at the closing of sale is moot.

Nor is there a reason for Copper Leaf to receive the equitable equivalent of a lien. It is simply not true that the Court entered an Order invalidating Copper Leaf's lien. Copper Leaf had then and has now a valid and enforceable lien against any real property in Suffolk County held in the name of the judgment debtor, Brent Borland. Copper Leaf's effort to distinguish New York precedent arguing that the improper-name rule applies only where a judgment creditor seeks to enforce a lien against a bona fide purchaser for value. Its position is contradicted by the Second Department's holding in Fischer, 178 A.D.3d at 925. In Fischer, it was the judgment creditor who unsuccessfully sought to enforce the lien against the judgment debtor based upon the misspelling of the judgment debtor's last name. Copper Leaf could have proceeded against the "Alana Marie

LaTorra Borland, as Trustee of the 43 N. Haven Way Revocable Trust" on a fraudulent conveyance, constructive trust or alter ego theory and obtained a valid lien against the Sag Harbor Property. It likely would have succeeded on at least one such theory because neither Brent Borland nor relief defendant Alana Marie LaTorra Borland opposed the sale of the property with net proceeds going to the satisfaction of the judgment against them. But Copper Leaf did not proceed in that fashion. Approving the Distribution Plan does not deprive it of any equitable right to a priority over other injured investors.

Further, there is no enforcement policy or goal of judicial efficiency fostered by rewarding otherwise similarly situated victims who are the first to the courthouse over those who await recovery through a civil enforcement action or restitution relief in a criminal action. In SEC v. Amerindo Inv. Advisors Inc., 05 cv 5231 RJS, 2014 WL 2112032, at *16 (S.D.N.Y. May 6, 2014), aff'd, 639 F. App'x 752 (2d Cir. 2016), while the SEC enforcement action was in progress, one group of victims obtained a state court judgment against certain of the wrongdoers. Judge Sullivan rejected the argument that the Court must—or should—give priority to the group's judgment over other claimants. Id. He noted that in distributing funds on an equitable basis, "courts are not required to favor one victim over others simply because that one raced to the courthouse and obtained a judgment." Id.

Finally, Copper Leaf does not claim, nor could it, that it should receive an enhanced recovery because of its role in bringing Borland's fraud to light. The indictment of Borland and the SEC's action all preceded Copper Leaf's institution of its civil action against Borland. Copper Leaf , LLC v. Belize Infrastructure Fund I, LLC, 18-cv-6377 (LTS).

The Distribution Plan is fair and reasonable as considered in the aggregate and does not impair any legal or equitable claim of Copper Leaf. It will be approved.

A Stay Pending Appeal Will be Denied

Copper Leaf seeks a stay of any Order approving the proposed Distribution Plan pending an appeal to the Second Circuit. The Second Circuit recently had occasion to review the standard that the movant must meet to obtain a stay pending appeal:

> The decision to grant or deny a stay is a matter committed to the court's discretion. Four factors inform the exercise of that discretion: (1) whether [appellant] has made a strong showing that [it] is likely to succeed on the merits of its jurisdictional challenge to the district court's entry of a preliminary injunction; (2) whether [the appellant] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure [the appellee]; and (4) where the public interest lies. . . . In that context, this court has recognized that irreparable harm is a critical prerequisite for the issuance of a preliminary injunction.

State of New Jersey v. United States Dep't of Transportation, No. 26-282, 2026 WL 696286, at *1 (2d Cir. Mar. 11, 2026) (quotation marks and internal citations omitted.)

For reasons set forth in this Order, as well as the Orders of August 30, 2024 and October 2, 2024, Copper Leaf has not shown a strong likelihood of success on the merits.

With regard to irreparable harm to Copper Leaf, if a stay is denied and the Recovered Amount is distributed pursuant to the Distribution Plan, it will receive its *pro rata* share but no more; if a stay is granted and it succeeds on appeal, it could receive the entirety of the Recovered Amount. If Copper Leaf had no other avenue of recovery for losses traceable to the fraud, its injury could be irreparable in nature. But at argument before this Court, counsel for a victim investor, Louis Cushman, asserted that Copper Leaf had entered into an agreement to receive $13 million from two investors who obtained certain properties in Belize. (July 16, 2026 Tr. at 19-20.) Copper Leaf's counsel offered no response. Since then, counsel for the victim investor has submitted a copy of a settlement agreement pursuant to which Copper Leaf is entitled to receive $13 million, including from the sale of certain real estate. (ECF 136-1.)

With regard to injury to the SEC, a delay in the distribution of the Recovered

Amount impairs, to some extent, its role as statutory enforcer of the securities law. With regard to the public interest, it is best captured in the letter on behalf of Mr. Cushman, an 85 year-old victim investor:

> Mr. Cushman, like many of the other victims, lost his investment nearly ten years ago. Mr. Cushman is 85 years old and understandably would like to recover from what is apparently the only monies in the United States available for distribution during his lifetime. A stay would likely delay that recovery for Mr. Cushman and the other victims for a year or more. The victims have waited long enough.

(ECF 136.)

Even if the Court assumed that the recovery by Copper Leaf of the $13 million is both contingent and collateral and that Copper Leaf will suffer irreparable injury in the absence of a stay, the balance of the other factors tilt strongly against the grant of a stay. Copper Leaf has not met its burden. The Court will delay, however, the effective date of the approval of the Distribution Plan for fourteen days.

CONCLUSION

The revised Distribution Plan (ECF 123) is approved, effective fourteen days from the date of this Order. Upon the effective date, the SEC may take all necessary steps to implement the provisions of the Distribution Plan.

The Clerk is directed to terminate the motions at ECF 109, 110, 121 and 123.

SO ORDERED.

New York, New York
July 28, 2026

P. Kevin Castel
United States District Judge